UNITED STATES of America, Plaintiff,

v.

Miguel Adolf VALDEZ–PACHECO, aka Mike Valdez; Roberto Martines–Lopez, aka Prieto; Wilfredo Elenes–Arce, aka Tano and Donald; Rose Arehart; Linda Lujan; Robert Steven Lujan; Dale Rhodes, aka Dale Lujan; Joseph Richard Valdez; Abdul Hasan, fka Floyd Lomax, Lisa Ann Wood; Corpus Londres, aka Cory; Saragosa Jiminez, aka Surry; Rosario Amador–Castro, aka "Huero;" Trinidad Amador–Castro, aka "Huero Chico;" David Lawrence Olstad; and Rene Valenzuela, Defendants.

No. CR 88–24–FR.

United States District Court,
D. Oregon.

Nov. 4, 1988.

777

Charles H. Turner, U.S. Atty., Frank Noonan, Asst. U.S. Atty., Portland, Or., for plaintiff.

Phillip M. Margolin, Margolin & Margolin, Portland, Or., for defendant Miguel Adolf Valdez–Pacheco.

Norman Sepenuk, Portland, Or., for defendant Wilfredo Elenes–Arce.

Michael D. Norris, Portland, Or., for defendant Rose Arehart.

Eric R. Johansen, Salem, Or., for defendant Linda Lujan.

Hap Wong, Portland, Or., for defendant Robert Steven Lujan.

Mark Bennett Weintraub, Portland, Or., for defendant Dale Rhodes.

Brian P. Conry, Portland, Or., for defendant Joseph Richard Valdez.

Gareld Gedrose, Portland, Or., for defendant Abdul Hasan, fka Floyd Lomax.

George G. Curtis, Zbinden & Curtis, Portland, Or., for defendant Lisa Ann Wood.

Steven T. Wax, Federal Defender, Portland, Or., for defendant Corpus Londres.

Susan Elizabeth Reese, Portland, Or., for defendant Saragosa Jiminez.

Kenneth Lerner, Asst. Federal Defender, Portland, Or., for defendant Rosario Amador-Castro.

Scott Erik Asphaug, Hoevet & Snyder, P.C., Portland, Or., for defendant Trinidad Amador-Castro.

## OPINION

FRYE, Judge:

The following defendants have filed a motion for an order suppressing evidence derived from certain wiretaps:

1. Miguel Adolf Valdez–Pacheco
2. Wilfredo Elenes–Arce
3. Rose Arehart
4. Linda Lujan
5. Robert Steven Lujan
6. Dale Rhodes
7. Joseph Richard Valdez
8. Abdul Hasan
9. Lisa Ann Wood
10. Corpus Londres
11. Saragosa Jiminez
12. Rosario Amador–Castro
13. Trinidad Amador–Castro

In early February, 1987, agents of the Portland, Oregon Drug Enforcement Task Force began to develop information regarding a suspected drug organization operating in the District of Oregon. Various members of this alleged organization were identified through investigative procedures, including the use of confidential informants, toll records, pen registers, controlled buys, surveillance, and the assistance of law enforcement officers in the State of Arizona.

The agents developed information that lead them to believe that Valdez–Pacheco was involved in smuggling cocaine and heroin from Mexico into the State of Arizona and then into the State of Oregon. Once the drugs were in the State of Oregon, the agents believed that Valdez–Pacheco had various dealers selling the narcotics, including his sister and his three nephews.

In the course of the investigation, the agents were told by an informant in August, 1987 that Valdez–Pacheco's Mexican source of the drugs was about to retire and Valdez–Pacheco was planning to hijack a shipment of drugs from Mexico and murder the guards accompanying the shipment.

On September 4, 1987, an order was issued by the United States District Court for the District of Arizona authorizing the interception of wire communications to and from Valdez–Pacheco's home in the State of Arizona and to and from three public telephones that he frequented.

On September 11, 1987, an application was made in this district, and an order was issued by the Honorable James A. Redden, United States District Judge, authorizing the interception of:

> wire communications of Miguel Adolf VALDEZ–Pacheco, Rose AREHART, Roberto MARTINEZ–Lopez, Steve LUJAN, Linda LUJAN, Lisa Ann WOOD, Floyd LOMAX, Robert Lee PHILLIPS, Joseph VALDEZ, Dale RHODES, and others both known and unknown, concerning the above–described offenses, to and from telephone number (503) 287–4862, subscribed to by Rose AREHART, located at 6220 N.E. 66th Avenue, Portland, Oregon.

An extension of that wiretap was granted on October 29, 1987, and a second extension was granted on December 16, 1987.

Defendants seek to suppress evidence obtained from the wiretaps. The court has ruled that the motions of each defendant will apply to all defendants unless the defendants state otherwise. Consequently, the court will address the issues raised in a general manner rather than referring to the grounds raised in each defendant's mo-

tion specifically. The motions filed by the defendants raise the following issues.

1. Was there probable cause for issuance of the wiretap order and its extensions?

2. Are the defendants entitled to a *Franks* hearing to challenge statements in the affidavits supporting the application for issuance of the wiretap order and the applications for its extensions? If so, which statements in which affidavits?

3. Did the wiretap application and the applications for extensions adequately state why other investigative techniques would not be successful?

4. Did the government properly minimize the intercepted conversations?

5. Did the government violate the attorney-client privilege by not minimizing intercepted conversations?

6. Was the authorization process adequate?

7. Did the government err in not reporting to Judge Redden in the District of Oregon that the wiretap application filed in the State of Arizona listed Rose Arehart and Robert Steven Lujan as target suspects?

*1. Was there probable cause for issuance of the wiretap order and its extensions?*

■  Initially, defendants argue that the affidavit of Special Agent O'Connor in support of the application for a wiretap did not provide probable cause to justify the interception of telephonic communications to and from Arehart's telephone.

18 U.S.C. § 2518(3) provides in part:

(3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—

(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception....

The "probable cause" for issuance of an order for telephonic communication interception is the same as "probable cause" for issuance of a search warrant. In determining whether probable cause exists to issue an order for telephonic communication interception, the issuing judge should consider the "totality of the circumstances" and:

make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate [judge] had 'a substantial basis for conclud[ing]' that probable cause existed. [Citation omitted].

*Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332–33, 76 L.Ed.2d 527 (1983).

The affidavit of Special Agent O'Connor in support of the application for wiretap is adequate to support the government's position that Valdez–Pacheco was a major distributor of cocaine and heroin; that Valdez–Pacheco at times lived with Arehart at 6620 N.E. 66th Avenue, Portland, Oregon; that Valdez–Pacheco used Arehart's telephone to conduct drug transactions; that when Valdez–Pacheco was out of town, Arehart's home was used as a "drop," and that Arehart's telephone was used as a message telephone for Valdez–Pacheco's drug organization. Judge Redden had probable cause to believe that the telephone subscribed to Arehart at 6620 N.E. 66th Avenue, Portland, Oregon was being used to facilitate narcotics offenses.

*2. Are the defendants entitled to a Franks hearing to challenge statements in the affidavits supporting the application for issuance of the wiretap order and the applications for its extensions? If so, which statements in which affidavits?*

Defendants argue that the extension order of October 29, 1987 should not have

been signed because the affidavit in support of the extension order contains substantial misrepresentations and/or omissions of fact. In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Court discussed the issue of a false statement contained in an affidavit. The Court explained that an affidavit is presumed to be truthful:

> This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

438 U.S. at 165, 98 S.Ct. at 2681.

■ Where a false statement is a product of negligent checking or recording of facts, the affidavit is not vulnerable to attack. However, there are circumstances where a defendant may go beyond the facial sufficiency of an affidavit and challenge the truthfulness of factual statements made in the affidavit.

> There are five requirements for a sufficient motion for a *Franks* hearing: (1) the defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find probable cause.

*United States v. Dicesare*, 765 F.2d 890, 894–95 (9th Cir.1985) (citations omitted).

A number of assertions of false statements or material omissions have been made by defendants.

*September affidavit in support of original wiretap application*

While defendants' allegations challenge the inferences that can be drawn from the facts presented by the affiant, defendants do not claim false statements or material omissions. The only statement in the affidavit asserted to be false is the statement that normal investigative techniques have proven to be inadequate. This allegation of a false statement is separately discussed in Section 3 of this opinion.

■ Further, in regard to the original wiretap application, Rose Arehart asserts that it was a material omission for the government to fail to include in the affidavit the results of the seven-day report for the Arizona wiretap, which shows that the government was in possession of video tapes of Valdez–Pacheco in a drug transaction with undercover agents. Arehart argues that this information negates any need for a wiretap in the State of Oregon. This argument is without merit.

*Affidavit in support of October 29, 1987 extension*

Defendants contend that the affidavit of October 29, 1987 in support of the first extension contains numerous false statements or material omissions that if brought to the attention of Judge Redden would have led him to conclude that there was no probable cause to issue the order extending the wiretap.

*First Alleged False Statement*

■ Page 2, paragraph 6—Affiant swears that there is probable cause to believe that Valdez–Pacheco and other defendants are planning to execute a drug hijacking and to commit murders.

Defendants argue that the last specific information as to the purported hijacking and murders was on August 3, 1987 when informant # 6 was told that the hijacking would take place sometime after August 10, 1987. Defendants argue that by October 29, 1987, there was no longer probable cause to believe these acts would take place.

There is no evidence, however, that the government knew or had reason to believe that the plan to execute a drug hijacking and to commit murders had been abandoned.

*Second Alleged False Statement*

■ Page 3, paragraph 8—In this paragraph, Special Agent O'Connor swears that "[t]here is probable cause to believe that the telephone number (503)287–4862 is being utilized in connection with the commission of the offenses detailed herein."

Defendants argue that by October 29, 1987, when the application for extension was made, the DEA knew that Valdez–Pacheco was not staying with Rose Arehart and that Arehart had little contact with him during the month of September and October because on September 25, 1987 there is a lengthy telephone conversation between Arehart and a woman named Barbara, during which Arehart makes it clear that Valdez–Pacheco does not live at her house and is staying at another place. Defendants assert that a number of other telephone conversations confirm the fact that Valdez–Pacheco was residing in Kalama, Washington by October 29, 1987.

The government agrees that Valdez–Pacheco was living at or utilizing residences other than Arehart's residence. The government maintains that Valdez–Pacheco utilizes a number of residences to store narcotics and/or cash and to otherwise further the business of narcotics distribution. The government argues that the affidavit read as a whole makes it clear that telephone number (503) 287–4862 was being utilized to commit narcotics offenses in that the affidavit sets out specific instances in which this telephone number was utilized in the furtherance of the conspiracy to distribute drugs. A review of the affidavit shows many instances in which Arehart's telephone was used in the furtherance of narcotics offenses.

The court concludes that there is no proof that the statement on page 3, paragraph 8 was falsely or recklessly made. As to the failure of Special Agent O'Connor to state to Judge Redden that the romantic relationship between Valdez–Pacheco and Arehart appeared over, the inclusion of this information would not have materially affected the probable cause determination. Judge Redden had been informed that Valdez–Pacheco utilized a number of residences in furtherance of the drug conspiracy. There was no reason for Judge Redden to conclude that the use of Arehart's residence for drug dealings had terminated even if the intimate relationship between Valdez–Pacheco and Arehart was over.

A *Franks* hearing is not required.

*Third Alleged False Statement*

■ Page 4, paragraph 11—In this paragraph, Special Agent O'Connor swears that since the wiretap was placed on Arehart's telephone on September 11, 1987, "[t]here were 1,136 telephone calls made from or received at that telephone. Of those telephone calls 39.9 percent involve conversations relating to criminal activity, primarily the illegal drug trade."

Defendants contend that this statement is intentionally false and that in fact from September 11, 1987 through October 10, 1987, drugs were mentioned in only one percent to three percent of the conversations. The government concedes that the figure 39.9 percent is an error and states that the correct number is 24 percent as reflected in the weekly reports submitted to Judge Redden.

■ The determination of the percentage of conversations that are drug related requires expert testimony. The court will rely upon the testimony of law enforcement agents gleaned from their experience investigating drug-related offenses as to the proper characterization of the telephone calls. Reference to the transcripts does not provide an adequate offer of proof that the accurate figure is substantially below 24%. A *Franks* hearing is not required in that defendants have failed to make an adequate offer of proof as to the falsity or recklessness of this assertion. Furthermore, Special Agent O'Connor specifically describes a number of telephone calls which allowed Judge Redden to evaluate the basis upon which the characterizations of Special Agent O'Connor were made. While the court cannot say that the representation of the overall percentage of drug-related calls would not materially affect the probable cause determination, the

inclusion of specific drug-related calls provides a basis for the determination of probable cause.

### Fourth Alleged False Statement

■ Page 5, paragraph 14(a)—In this lengthy paragraph, Special Agent O'Connor sets out examples of phone calls intercepted from taps on Arehart's telephone that he asserts demonstrate the involvement of certain defendants in the drug trade. These are as follows:

1. Special Agent O'Connor states that Valdez–Pacheco called Arehart and told her that he would be travelling to Portland, Oregon on September 12, 1987, and this conversation is a drug-related conversation.

2. Special Agent O'Connor states that a telephone conversation made on September 14, 1987 between Arehart and Ida M. Romero, also known as Margaret, relates to a $500.00 payment made to Richard Joseph Valdez, and is a drug-related conversation.

3. On pages 5–6 in paragraph 14(a), Special Agent O'Connor lists a number of calls involving Valdez–Pacheco's flight into Portland and being picked up at the airport by Arehart as drug-related calls.

4. On page 6, paragraph 14(a), Special Agent O'Connor states that Arehart picked up Rene Valenzuela at the airport. Later on page 6, he states "DEA NADDIS records indicate that VALENZUELA was suspected of homicide on two occasions of witnesses who might testify against him." Special Agent O'Connor says these are drug-related facts.

Defendants argue that the characterization of telephone calls relating to these matters as drug related is false.

The government argues that based upon the information contained in Special Agent O'Connor's affidavit, the characterization of the calls as drug related was clearly justified. The government also argues that the assertion that Valenzuela was "suspected" of homicide has not been properly challenged and is in fact a true assertion.

The factual allegations in paragraph 14(a) piece together information obtained from the intercepted telephone conversations, information obtained through other investigative procedures, as well as information already known from a prior investigation. Paragraph 14 contains subparagraphs (a) through (z) and (1a) through (1q). Defendants challenge only the factual basis for the facts alleged in paragraph 14(a), which they contend are false. There has been no showing that Special Agent O'Connor acted recklessly in asserting the conclusions in paragraph 14(a). There is no indication that the statements are false. While defendants submit a sworn statement to the effect that there was insufficient evidence of any homicides committed by Rene Valenzuela, this does not establish that the affiant was false or reckless in stating that Valenzuela was suspected of such crimes. More importantly, the challenged statements are not necessary to the finding of probable cause. The facts as alleged in the remaining portions of paragraph 14, (b) through (z) and (1a) through (1q), adequately support the conclusions of Judge Redden as to probable cause.

A *Franks* hearing is not required.

3. *Did the wiretap application and the applications for extensions adequately state why other investigative techniques would not be successful?*

18 U.S.C. § 2518(1)(c) provides:

(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

\*　　\*　　\*　　\*　　\*　　\*

(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

Defendants contend that the original wiretap application as well as the applications for extension fail to present adequate facts

to establish that normal investigative techniques were not adequate and that a wiretap and its extensions were necessary.

The electronic interception of oral or wire communications is not to be routinely employed as a first step of an investigation. *United States v. Giordano,* 416 U.S. 505, 515, 94 S.Ct. 1820, 1826, 40 L.Ed.2d 341 (1974). In *United States v. Spagnuolo,* 549 F.2d 705 (9th Cir.1977), the court set forth the guidelines for district courts to use in evaluating the sufficiency of an affidavit pursuant to Section 2518(3)(c).

We shall try once more to promulgate a manageable standard by which to judge affidavits under section 2518(1)(c) recognizing as we must that this statutory standard provides no sharp line, on each side of which will fall the good and the bad affidavits, but rather expresses an ideal. The extent to which a particular affidavit conforms to that ideal always will remain a matter about which good faith differences of opinion can exist.

We start by indicating that the common thread running through the *Kerrigan* line of decisions is that the affidavit, read in its entirety, must give a factual basis sufficient to show that ordinary investigative procedures have failed or will fail in the particular case at hand. This may be accomplished in various ways, including, but not limited to, descriptions of the particular illicit operation's peculiarities which necessitate a wiretap and of the heretofore unsuccessful investigatory efforts of the police. *United States v. Feldman,* 535 F.2d [1175] at 1178–79; [ (9th Cir.1976)]; *United States v. Turner,* 528 F.2d [143] at 152 [ (9th Cir.1975)]; *United States v. Kerrigan,* 514 F.2d [35] at 38 [ (9th Cir. 1975)]. *Kalustian* does not conflict with this interpretation of section 2518(1)(c). An affidavit composed solely of conclusions unsupported by particular facts gives no basis for a determination of compliance with section 2518(1)(c). *Kalustian* teaches no more than that.

These decisions permit us to make the following observations. To show that "other investigative procedures have been tried and failed" the affidavit must

reveal that normal investigative techniques have been employed in a good faith effort to determine the identity of those violating the law and to assemble sufficient evidence to justify their prosecution and that these efforts have failed to achieve their ends. The good faith effort need not have exhausted all possible uses of ordinary techniques. What is required is a showing that in the particular investigation normal investigative techniques employing a normal amount of resources have failed to make the case within a reasonable period of time.

549 F.2d at 710 (footnote omitted).

In 1986, the Ninth Circuit Court of Appeals again summarized the role of the district court in *United States v. Brone,* 792 F.2d 1504 (9th Cir.1986):

An application for a court-authorized wiretap must include 'a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous,' 18 U.S.C. § 2518(1)(c), and facts indicating that 'normal investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous,' *id.* § 2518(3)(c). This necessity requirement means that the affidavit must set out a factual background that shows that ordinary investigative procedures, employed in good faith, would likely be ineffective in the particular case. *See United States v. Ippolito,* 774 F.2d 1482, 1486 (9th Cir.1985); *United States v. Brown,* 761 F.2d 1272, 1275–76 (9th Cir.1985). As a general rule, the wiretap should not be the initial step in the investigation. *United States v. Bailey,* 607 F.2d 237, 241 (9th Cir.1979), *cert. denied,* 445 U.S. 934, 100 S.Ct. 1327, 63 L.Ed.2d 769 (1980), but law enforcement officials need not exhaust every conceivable alternative before obtaining a wiretap. *United States v. Spagnuolo,* 549 F.2d 705, 710 (9th Cir.1977).

792 F.2d at 1506.

Defendants argue that the affidavits in support of the application for wiretap war-

rant dated September 11, 1987, in support of the extension dated October 29, 1987, and in support of the extension dated December 16, 1987 fail to meet the requirements of Sections 2518(1)(c) and (3)(c). Defendants contend that the affidavits contain conclusory allegations and material misstatements of fact as well as omitting material facts. The government argues that the specificity with which Special Agent O'Connor states the futility of other investigative techniques is adequate to meet the requirements of law.

Defendants have provided to the court 985 pages of discovery materials produced by the government in support of their assertion that normal investigative procedures had in fact succeeded and that a wiretap was unnecessary. Defendants maintain that the government possessed enough evidence against the defendants to obtain search and arrest warrants against the defendants prior to obtaining the wiretap.

▮ Defendants also submit an affidavit in support of a search warrant in *United States v. Beltran,* CR No. 86–68, CR 86–107, in which the affiant Neil Van Horn, a DEA agent states:

> That during the course of the investigation herein described, the following information has been developed regarding Miguel Adolf VALDEZ–PACHECO, aka: Mike VALDEZ:
>
> A. That Mike VALDEZ has a prior federal narcotics conviction in the District of Oregon, which occurred during 1973. VALDEZ was convicted on six counts involving distribution, Possession with Intent to Distribute and Conspiracy to Distribute Heroin.
>
> B. That VALDEZ was arrested by the PPB for possession of heroin and cocaine on October 30, 1985. Disposition is still pending in Multnomah County, Oregon.
>
> C. That there is currently an outstanding warrant of arrest for VALDEZ in Albuquerque, New Mexico. The warrant is for Failure to Appear on charges of trafficking in heroin and marijuana.

> Albuquerque, New Mexico will extradite.
>
> D. That Michael VALDEZ was identified by CRI–J as a source of supply of cocaine for Charles DUNNING.
>
> E. That prior to being convicted in Oregon State Court in 1985, for Possession of Cocaine, Charles Gene DUNNING advised DEA SA Scott Lawrence that DUNNING was considering cooperating with the government for certain considerations regarding the criminal charges he then faced. SA Lawrence asked DUNNING what was being offered. DUNNING advised that he could assist in apprehending Michael VALDEZ for trafficking in heroin.
>
> F. That Michael VALDEZ has engaged in the exchanges of real property with Joe RIVAS–BELTRAN and/or Susan HILL;

Lastly, defendants submit 1) the work product of their counsel which summarizes the information contained in the discovery material, 2) affidavits of their counsel relating to the discovery materials, and 3) the factual assertions of counsel in their memoranda.

In *United States v. Brone,* 792 F.2d 1504 (9th Cir.1986), the court stated:

> The judge authorizing a wiretap has considerable discretion. *United States v. Martin,* 599 F.2d 880, 886–87 (9th Cir.), *cert. denied,* 441 U.S. 962, 99 S.Ct. 2407, 2408, 60 L.Ed.2d 1067 (1979). Accordingly, the standard of review of the decision on appeal is deferential. *United States v. Brown,* 761 F.2d [1272] at 1275 [ (9th Cir.1985) ]. We review de novo whether a full and complete statement of the facts was submitted in compliance with 18 U.S.C. § 2518(1)(c), but we review the issuing judge's decision that the wiretaps were necessary for an abuse of discretion. *Brown,* 761 F.2d at 1275.

792 F.2d at 1506. This court will use this standard of review in its consideration of Judge Redden's decision to issue the wiretap and its extensions.

Defendants contend that the information collected pursuant to the wiretap was adequate to prosecute the defendants and that

no extensions were necessary. The decision of Judge Redden that further evidence and investigation was necessary was clearly within his discretion.

The more difficult issue is whether a "full and complete statement of the facts was submitted [to Judge Redden] in compliance with 18 U.S.C. § 2518(1)(c)." 792 F.2d at 1506. This issue is reviewed de novo. Defendants argue that the affidavits fail to provide material facts thereby requiring a *Franks* hearing.

■■■ The 987 pages of discovery submitted to the court include some 350 pages relating to what the government knew about the alleged conspiracy. These materials do not support the defendants' position that Special Agent O'Connor misstated the state of the investigation to Judge Redden. While Special Agent O'Connor did not refer to every report made or every fact collected, the facts and circumstances presented to Judge Redden have not been shown to be false or misleading by the discovery materials referred to or by any of the affidavits with the possible exception of the Beltran affidavit.

Special Agent O'Connor stated that there were no informants working this investigation who were able to penetrate the Valdez–Pacheco organization. The court is satisfied with this statement. However, the assertion made by the affiant in the Beltran affidavit that "he could assist in apprehending Michael Valdez for trafficking heroin" remains unexplained and is central to the government's assertion that the use of informants was no longer effective.

The court will allow the parties to present evidence on the limited issue of whether Dunning could have assisted in apprehending Miguel Valdez–Pacheco before it decides whether the government's assertion of necessity was flawed and requires suppression.

4. *Did the government properly minimize the intercepted conversations?*

Defendants argue that the communications intercepted by the wiretap should be suppressed because of the failure of law enforcement agents to properly minimize interception of the wire communications.

■■■ Minimization requires an objective assessment of a law enforcement agent's actions in light of the facts and circumstances of the particular case. The standard for minimization is one of reasonableness under the circumstances. *United States v. Chavez,* 533 F.2d 491, 492–93 (9th Cir.1976). The burden of establishing a prima facie showing of minimization is on the government. The government's burden can be established on the basis of affidavits, supplemented by logs and tapes to make the necessary showing. *United States v. Santora,* 600 F.2d 1317, 1320, amended 609 F.2d 433 (9th Cir.1979).

■■■ The statute does not forbid the interception of non-relevant conversations, but rather instructs law enforcement agents to conduct the surveillance in such a manner as to "minimize" the interception of such conversations. *Scott v. United States,* 436 U.S. 128, 140, 98 S.Ct. 1717, 1724–25, 56 L.Ed.2d 168 (1978). In assessing whether law enforcement agents have complied with the minimization requirement, the courts have identified a variety of factors to be considered in determining reasonableness, including: 1) the nature of the criminal enterprise under investigation; 2) the instructions for minimization given to the agents; 3) the extent of judicial supervision; 4) the percentage of nonpertinent calls; 5) the nature, ambiguity and length of a call; 6) the timing of the calls during the wire-tap period; and 7) the usual nature of the use of the telephone which is tapped. *Id.* at 140–42, 98 S.Ct. at 1724–26.

■■■ The government argues that the record establishes a prima facie case of minimization and that the defendants' conclusory allegations are inadequate to require suppression. The government relies upon the nature of the conspiracy in its contentions that minimization was adequate—that is, a conspiracy to distribute controlled substances—and the necessity of law enforcement officers to detect code language used within the drug trade. Further, this case involves the interception of

conversations conducted, in part, in a foreign language. These factors make minimization difficult. The government asserts that the agents who were responsible for the wiretap knew the requirements of minimization and reasonably minimized the interception of conversations. Further, the government notes that seven-day reports were required and reviewed by the court to monitor minimization.

In support of its position, the government submits the affidavit of DEA Special Agent Patrick O'Connor, which states in part:

On September 11, 1987, your affiant along with other law enforcement officers involved with the interception of telephone number 503-287-4862, were briefed by Assistant United States Attorney (AUSA) Baron C. Sheldahl regarding monitoring of conversations and the minimization of these conversations deemed not pertinent. Additionally, all officers involved in monitoring of any conversations signed the instructions regarding minimization prepared by AUSA Sheldahl. The order authorizing the interception was posted in the listening post and was read by each officer who participated in the monitoring.

In regards to the two (2) extensions applied for and signed by Judge Redden on October 29, 1987 and December 18, 1987, your affiant made a copy of the instructions given by AUSA Sheldahl on September 11, 1987 and advised all officers involved in monitoring that the instructions were to be strictly followed. All officers read the instructions. Additionally, the order authorizing the extension was posted with the instructions in the listening post.

These instructions and orders are attached as Exhibit 1 in this affidavit.

Your affiant is familiar with the provisions of the Electronic Communications Privacy Act of 1986. Your affiant is familiar with the provisions of 18 U.S.C. [§] 2518(5) which allows monitoring of conversations without minimization if a code or foreign language is used and an expert in such language or code is not reasonably available during interception.

Your affiant knows that Miguel Valdez and others speak in a foreign language from time to time and also utilize code when discussing narcotic matters on the telephone. Your affiant knows from Task Force Agent (TFA) David Wright, DEA, Phoenix Task Force, that Miguel Valdez used coded conversation when discussing narcotics and would communicate in a foreign language during conversations. Your affiant is also aware that Miguel Valdez and others used coded words and phrases when discussing narcotic matters and often spoke in a foreign language.

A review of the transcript of the intercepted conversations shows that a substantial number of interceptions were terminated upon the recognition that they were not drug related. Because this telephone was not located in the primary residence of Valdez–Pacheco, the alleged head of an alleged drug organization, but was located in a residence that he frequented and that many others recognized as a place at which to contact him and to do business with him, there was a need to initially listen to conversations in order to determine their possible significance.

The transcript contains calls that were obviously non-pertinent calls—i.e., calls to and from children—but these interceptions were terminated immediately. This shows that the law enforcement agents were aware of and attempted to comply with the requirements of minimization. The fact that non-pertinent calls were intercepted does not establish that the requirements for minimization were not met.

The court finds that based upon the transcript of the intercepted conversations and the affidavit of Special Agent O'Connor, the government has met its prima facie burden to establish the reasonableness of the minimization. No evidence to the contrary was presented.

5. *Did the government violate the attorney-client privilege by not minimizing intercepted conversations?*

On September 11, 1987, William F. Weld, Assistant Attorney General, Criminal Divi-

sion, signed an Authorization for Interception Order Application. In this document, Weld states:

> In supervising the interception under this authorization, care should be exercised to avoid intercepting any communication of a person under criminal charges which pertains to his culpability in relation to the charges or the strategy that he contemplates employing in his defense. In this regard, it should be noted that Miguel Adolf Valdez–Pacheco is currently under criminal charges for violation of state drug and organized crime laws.

In the order signed by Judge Redden on September 11, 1987, Judge Redden states:

> IT IS FURTHER ORDERED that particular care be exercised to avoid the interception of any conversation of a person under criminal charges which pertained to his culpability in relation to his criminal charges or the strategy which he contemplates employing in his defense.

▆ Defendants move the court to suppress evidence derived from the interception of communications to which defendant David Lawrence Olstad, an attorney, was a party on the grounds that law enforcement agents failed to minimize attorney-client conversations notwithstanding special instructions from the issuing judge and the duty to minimize such conversations.

Defendants argue that at least as early as September 9, 1987, law enforcement agents learned that Olstad represented many of the potential targets of their investigation, especially Miguel Adolf Valdez–Pacheco. Defendants argue that despite this knowledge these law enforcement agents improperly intercepted conversations between Valdez–Pacheco and Olstad and Wilfredo Elenes–Arce and Olstad.

The government concedes that law enforcement agents knew eventually that there was a "relationship" between Olstad and Valdez–Pacheco and Olstad and Elenes–Arce. The government argues, however, that the agents presumed that the relationships were ones in which Olstad operated as the advisor for a criminal con-

spiracy. The government points out that the conversations of Olstad were monitored five different times prior to October 9, 1987, and at no time prior to that date did Olstad identify himself or in any way indicate that he was acting as an attorney for Valdez–Pacheco or Elenes–Arce. The conversations prior to October 9, 1987 involve discussions as to Olstad's drug addiction and obtaining drugs as well as discussions about other people's cases.

The court has reviewed the text of the conversations intercepted between Olstad and Valdez–Pacheco prior to October 9, 1987. There is little or no indication that the conversations relate to Valdez–Pacheco's "culpability in relation to the charges [against him] or the strategy that he contemplates employing in his defense." While the government knew that Olstad was an attorney, the conversations monitored prior to October 9, 1987 principally involve the issue of drug addiction and can be reasonably interpreted as relating to obtaining drugs.

These conversations need not be suppressed on the grounds that the government failed to minimize intercepted conversations. The government had reason to believe that the conversations could relate to criminal activity.

The court reserves ruling as to the suppression of any of these conversations on the ground that their use violates the attorney-client privilege. An evidentiary hearing is necessary to determine the relationship between Valdez–Pacheco and Olstad and Elenes–Arce and Olstad and the proper application of the attorney-client privilege. The court will conduct this hearing after Olstad obtains counsel.

It appears to the court that only Olstad, Valdez–Pacheco and Elenes–Arce are involved in the resolution of the attorney-client privilege issue. Counsel for any other defendant seeking to suppress any conversations on the grounds of attorney-client privilege should notify the court specifically as to which conversations and the basis for the suppression within thirty days of the date of this order. Because the attorney-client privilege can only be

claimed by those to whom it may personally apply, the court no longer considers these motions regarding attorney-client privilege as joined in by all other defendants.

6. *Was the authorization process adequate?*

■ Defendants contend that the court should suppress the electronic surveillance because Attorney General Edwin Meese failed to specifically designate a centralized authority or a senior Justice Department official to conduct these authorizations. Defendants argue that the special designation made by the Attorney General is overly broad.

The designation made states:

By virtue of the authority vested in me by 28 U.S.C. [§§] 509, 510, 5 U.S.C. [§] 301, and 18 U.S.C. [§] 2516(1), and in full recognition that 18 U.S.C. [§] 2516(1) empowers the Attorney General, Deputy Attorney General, and Associate Attorney General to authorize applications to a Federal judge of competent jurisdiction for orders authorizing the interception of wire or oral communications, I hereby specially designate the Assistant Attorney General in charge of the Criminal Division, any Acting Assistant Attorney General in charge of the Criminal Division, and any Deputy Assistant Attorney General of the Criminal Division, to exercise the power conferred by Section 2516(1) of Title 18, United States Code, to authorize applications to a Federal judge of competent jurisdiction for orders authorizing the interception of wire or oral communications by the Federal Bureau of Investigation or a Federal agency having responsibility for the investigation of the offense as to which such application is made, when such interception may provide evidence of any of the offenses specified in Section 2516 of Title 18, United States Code.

Defendants argue that this "special designation" does not square with the case law or the statutory authorization contained in 18 U.S.C. § 2516.

The government explains that in this case, William Weld, Assistant Attorney General of the Criminal Division, and Joe Whitley and Victoria Toensig, Deputy Assistants Attorney General in the Criminal Division, are authorized to approve wiretaps.

The government contends that the designation made by Attorney General Meese is within his statutory authority.

In 1986, Congress authorized the Attorney General to specially designate any acting Assistant Attorney General or any Deputy Assistant Attorney General in the Criminal Division to approve wiretap applications. 18 U.S.C. § 2516(1) states in part:

(1) The Attorney General, Deputy Attorney General, Associate Attorney General, any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General in the Criminal Division specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction.

The designation made by the Attorney General is in conformance with the statutory provision.

■ The defendants further argue that the authorizing official did not properly exercise his judgment *in this case.* The defendants assert that the role of Frederick Hess raises questions as to whether a senior Justice Department official actually reviewed the application.

The government acknowledges that a clerical error was made in assembling the approval package of the first wiretap extension reflected in defendant Joseph Richard Valdez's Exhibit 7. The extension incorrectly identified the authorizing official as Frederick D. Hess and not Joe D. Whitley. The government asserts that the authorization was obtained but a clerical error misidentified the proper official. Since the authorization was proper, the government asserts that suppression is not required.

The court finds that the irregularity shown in defendant Joseph Richard Valdez's Exhibit 7 requires the government to produce affidavits from the appropriate government officials explaining the autho-

rization process used in this case as well as the circumstances resulting in the error reflected in defendant Joseph Richard Valdez's Exhibit 7.

The motion to suppress is denied on the grounds that the designation is too broad. Ruling is deferred as to the contention that an irregularity occurred in the issuing process.

7. *Did the government err in not reporting in the District of Oregon that the wiretap application filed in the State of Arizona listed Rose Arehart and Robert Steven Lujan as target suspects?*

This case involves investigations by law enforcement in the States of Arizona and Oregon. On September 4, 1987, an application was made and an order issued for a wiretap on the telephone located in the Arizona residence of Miguel Adolf Valdez–Pacheco. The affidavit in support of the application for the wiretap stated in part:

a. There is probable cause to believe that Miguel Adolf VALDEZ–Pacheco ... Rose AREHART ... Steve LUJAN ... and others yet unknown, have and are committing offenses involving the conspiracy to commit murder, the importation of controlled substances, distribution of controlled substances, conspiracy to import and distribute controlled substances, engaging in a continuing criminal enterprise, and the unlawful use of communication facilities, to facilitate the commission of these acts, all in violation of Title 13, Arizona Revised Statutes, Section 1105 and Title 21, United States Code, Sections 952, 841(a)(1), 963, 846, 848 and 843(b).

The order issued by the judge in the Arizona case states in part:

d. There is probable cause to believe that the telephones bearing the numbers (602) 986–2046, located at 11324 E. 5th Avenue, Apache Junction, Arizona, subscribed to by Mike VALDEZ, Mountain Bell pay telephones (602) 984–9649, (602) 984–9681, and (602) 984–9686, located at the Circle K Store, 11343 E. Apache Trail, Apache Junction, Arizona, have been and are being used by Miguel Adolf VALDEZ–Pacheco, Rene Meza VALEN-

ZUELA, ~~Rose AREHART, Luis M. MEDRANO, Donna BARRERAS, Steve LUJAN, Robert Lee PHILLIPS, Roy R. LOPEZ, Joe C. VALDEZ~~ and others [known and] yet unknown.

WHEREFORE, it is hereby ordered that Special Agents of the Drug Enforcement Administration, United States Customs Service, and DEA Deputized Officers of the Arizona Department of Public Safety are authorized, pursuant to the application authorized by an appropriate official of the Criminal Division, US Department of Justice, pursuant to the power delegated to that official by special designation of the Attorney General under the authority vested in him authority vested in him [sic] by Section 2516 of Title 18, United States Code, to:

1. Intercept wire communications of Miguel Adolf VALDEZ–Pacheco, Rene Meza VALENZUELA, ~~Rose AREHART, Luis M. MEDRANO, Donna BARRERAS, Steve LUJAN, Robert Lee PHILLIPS, Roy R. LOPEZ, Joe C. VALDEZ~~ and others [known and] yet unknown, concerning the above described offenses, to and from telephone numbers (602) 986–2046, subscribed to by Miguel Adolf VALDEZ–Pacheco, located at 11324 E. 5th Avenue, Apache Junction, Arizona Mountain Bell pay telephones (602) 984–9649, (602) 984–9681, and (602) 984–9686 located at 11343 East Apache Trail, Apache Junction, Arizona.

(Additions and deletions made, and initialed on original, by Arizona judge).

On September 11, 1987, an application for the wiretap of the telephone of Rose Arehart was submitted to Judge Redden.

18 U.S.C. § 2518(1)(e) provides:

(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

\*    \*    \*    \*    \*    \*

(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application;

In the application to Judge Redden, the affidavit of the Assistant United States Attorney states as follows:

No previous application has been made to any Judge for authorization to intercept or for approval of interception of wire communications involving any of the same persons, facilities, or places specified herein, except Miguel Adlof [sic] Valdez–Pacheco. On September 4, 1987, application was made and an Order was issued by the U.S. District Court for the District of Arizona authorizing the interception of the wire communications of Miguel Adlof [sic] Valdez–Pacheco at phone numbers 602/986–2046, 602/984–9649, 602/984–9681, and 602/984–9686.

The extension applications include similar representations.

■ Defendants Rose Arehart and Steve Lujan contend that the application before this court fails to meet the requirements of Section 2518(1)(e) in that it falsely represented to Judge Redden that no applications for wiretap had been previously made to intercept the communications of Arehart and Lujan. Arehart and Lujan point out that the Arizona wiretap application specifically sought to intercept the conversations of Arehart and Lujan and that the Arizona judge denied the government's request. Arehart and Lujan assert that the Arizona judge found that there was no probable cause to believe that Arehart and Lujan were involved in criminal activity and refused to permit the interception of personal communications of Arehart and six other individuals unless the telephone calls were initiated by Miguel Adolf Valdez–Pacheco or Rene Valenzuela. Arehart and Lujan assert that the government falsely told Judge Redden that no previous applications had been made to intercept their conversations and that this misrepresentation requires suppression of the wiretap.

The government acknowledges that Arehart and Lujan were listed in the Arizona application and that it failed to apprise Judge Redden of this fact. The government contends that this error was made in good faith, and that even without the omitted information, there was sufficient information for Judge Redden to authorize the wiretap here.

Arehart asserts that the omission in this case amounts to a reckless omission in that the government affirmatively stated that no applications had been made when in fact it knew that there was an application as to the conversations of Valdez–Pacheco and also knew that Arehart and Lujan would likely talk to Valdez–Pacheco.

In *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), the United States Supreme Court held that under Title III suppression is only required for a "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." 429 U.S. at 433–34, 97 S.Ct. at 671 (citing *United States v. Giordano*, 416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341 (1974)). The Court stated that a violation of Section 2518(1)(b)(iv), requiring that an application for an intercept order identify those persons the government has probable cause to believe are committing the offense and whose communications are expected to be intercepted, "could hardly invalidate an otherwise lawful judicial authorization." *Donovan*, 429 U.S. at 435, 97 S.Ct. at 671–72. Therefore, suppression was not required.

After the *Donovan* case, several courts have concluded that suppression is an inappropriate remedy for violations of Section 2518(1)(e). *See, e.g., United States v. Abramson*, 553 F.2d 1164, 1169–70 (8th Cir.), *cert. denied*, 433 U.S. 911, 97 S.Ct.

2979, 53 L.Ed.2d 1095 (1977); *United States v. Gambale*, 610 F.Supp. 1515, 1537 (D.Mass.1985); *United States v. Orozco*, 630 F.Supp. 1418, 1518, (S.D.Cal.1986); *United States v. Van Horn*, 789 F.2d 1492, 1500 (11th Cir.1986); *United States v. Sullivan*, 586 F.Supp. 1314, 1320–23 (D.Mass. 1984); *United States v. Harvey*, 560 F.Supp. 1040, 1070–72 (S.D.Fla.1982).

In *Sullivan*, the court explained:

It is difficult to see how suppression could be required for noncompliance with § 2518(1)(e) when it is not required for a violation of § 2518(1)(b)(iv). Disclosure of prior applications naming those individuals who are targets of a new investigation necessarily depends on the naming of the targets in the new application. If failure to name target Smith in a wiretap application would not require suppression, then failure to disclose prior applications in which Smith was a named interceptee should not require suppression.

*Sullivan*, 586 F.Supp. at 1323. These courts conclude that a negligent omission or an inadvertent failure to disclose does not require suppression.[1] While the question of whether an *intentional* omission would require suppression has not specifically been addressed, this court need not address that issue based upon the facts presented in this case.

The evidence presented at the suppression hearing shows that Assistant United States Attorney Frank Noonan and Special Agent O'Connor knew that an application for a wiretap had been made on Valdez–Pacheco's telephone in the State of Arizona but were not aware of the fact that the Arizona application listed Arehart, Lujan and others as specific targets. The evidence further shows that Special Agent O'Connor received a copy of the Arizona order with the names of Arehart and Lujan conspicuously crossed off on September 16, 1987, after the intial application and prior to the extension applications. Special Agent O'Connor testified that he did not comprehend the significance of this information and did not knowingly withhold this

information from Judge Redden in the extension applications. The court finds Special Agent O'Connor's testimony credible. The testimony further establishes that Assistant United States Attorney Noonan did not become aware of the deletions in the Arizona order prior to the termination of the Oregon wiretap.

There is no evidence in this case that the government consciously withheld any information from Judge Redden or intended to mislead him. The government informed Judge Redden of the Arizona wiretap. The error of the government can only be characterized as a negligent omission or an inadvertent error. The court finds that suppression is not required upon the facts before the court. The court notes, however, that the statute includes the person *authorizing* the application as well as the person presenting the wiretap application. The court will allow defendants to present evidence as to the authorizing persons at the hearing on November 7, 1988.

An order based upon this written opinion will be entered on Monday, November 7, 1988.

---

**1.** In fact, the court is not aware of any case where a violation of Section 2518(1)(e) has been held to require suppression.