UNITED STATES of America, Plaintiff,

v.

Ronald W. SKEDDLE, et al., Defendants.

No. 3:95CR736.

United States District Court,
N.D. Ohio,
Western Division.

June 2, 1997.

---

Robert William Kern, Office of U.S. Atty., Cleveland, OH, Thomas A. Karol, Office of U.S. Atty., Toledo, OH, for U.S.

Jon D. Richardson, Sr., Kaplan, Richardson, Rost & Helmick, Toledo, OH, William M. Connelly, Connelly, Soutar & Jackson,

Toledo, OH, Peter R. Ginsberg, Gold & Wachtel, New York City, Robert Gold, Robert Gold, Michael Sommer, McDermott, Will & Emery, New York City, for Ronald W. Skeddle, defendant.

Sheldon S. Wittenberg, Wittenberg & Phillips, Toledo, OH, Stuart G. Nash, Brendan V. Sullivan, Jr., Barry S. Simon, Marcie R. Ziegler, Williams & Connolly, Washington, DC, for Darryl J Costin, defendant.

Jerome Phillips, Wittenberg & Phillips, Toledo, OH, Richard A. Hibey, Gordon A. Coffee, Michael K. Atkinson, Douglas N. Greensburg, Winston & Strawn, Washington, DC, for Edward B Bryant, defendant.

Gerald Arthur Messerman, Messerman & Messerman, Cleveland, OH, for David L Herzer, defendant.

Niki Z. Schwartz, Gold, Rotatori, Schwartz & Gibbons, Cleveland, OH, John E. Martindale, Martindale, Bryztwa & Quick, Cleveland, OH, for Joseph G Corsaro, defendant.

John J. Callahan, Toledo, OH, for John R Purser, defendant.

John Czarnecki, Cooper, Walinski & Cramer, Toledo, OH, for Clarence H Martin, defendant.

J. Michael Murray, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for David M Hobe, defendant.

Norman G. Zemmelman, Britz & Zemmelman, Toledo, OH, Sander Schwartz, Cook, Riley, Smith, Nance & Schwartz, Cleveland, OH, Richard G. Lillie, Lillie & Holderman, Cleveland, OH, for Floyd A Trouten, III, defendant.

### Order

CARR, District Judge.

This is a criminal case in which the defendants are charged with mail and wire fraud, money laundering, and tax evasion. The indictment alleges that three former directors and officers of Libbey–Owens–Ford Company (LOF), Ronald W. Skeddle (former President and C.E.O. of LOF), Darryl Costin (former Vice–President of LOF), and Edward Bryant (former Vice–President of LOF) (the LOF defendants) conspired with another former LOF employee, John Purser, two attorneys, David Herzer and Joseph Corsaro, two accountants, Floyd Trouten and David Hobe, and a university professor, Clarence Martin, to obtain money and property fraudulently from LOF, launder the proceeds of their frauds, and evade taxes.

Pending is a motion by the LOF defendants to suppress attorney-client communications seized from the Lorain, Ohio, law firm of Wickens, Herzer & Panza. (Doc. 113). The defendants have supplemented their motion with a privilege log listing specific documents as to which they claim that the attorney-client privilege attaches. (Doc. 217 (under seal)). As to many of the documents listed in the privilege log, it appears likely, in view of the findings and conclusions expressed herein, that the crime-fraud exception to the attorney-client privilege applies; therefore, the defendants shall be granted leave to submit a revised privilege log in light of this opinion.

The materials which the LOF defendants seek to exclude were seized during execution of a search warrant at Wickens, Herzer & Panza. The defendants Corsaro and Herzer are lawyers with that firm. According to the affidavit on which the search warrant was based, Herzer conspired with the LOF and other defendants to commit the illegal acts alleged in the affidavit.

At the time I issued the warrant, I included a directive to the agents to produce directly to me for in camera inspection any documents as to which the defendant Herzer asserted the attorney-client privilege. (Doc. 113, Exh. 2, ¶ 7). During execution of the warrant, Herzer claimed privilege with regard to eleven boxes of materials; the eleven boxes were brought to my office without prior inspection by the agents.

Though I had initially anticipated inspecting the eleven boxes of materials, I concluded a week after execution of the warrant that I would permit a government "taint team" to inspect the allegedly privileged materials, rather than undertaking that inspection myself. Though it appeared that the LOF defendants were aware of the search and seizure of the materials, they had not come forward following the seizure with a demand to be

heard with regard to the claim of privilege or to participate in any review that might occur. In light of the finding of probable cause that had preceded the issuance and execution of the warrant, I relinquished the responsibility for conducting the initial review to the taint team.

By failing to review all eleven boxes of materials, I, according to the defendants' motion to suppress those materials, violated their rights under the Fourth and Fifth Amendments and permitted the government to gain improper access to and use of materials covered by the attorney-client privilege. For the reasons that follow, I disagree.

### I. Fourth Amendment Challenge

■ The defendants claim that my failure to conduct an in camera review of the materials as to which the defendant Herzer asserted the attorney-client privilege as the warrant was being executed violated the Fourth Amendment rights of the LOF defendants. While I agree that these defendants have standing to assert Fourth Amendment challenges to the search and seizure of materials from their lawyers, e.g., United States v. Knoll, 16 F.3d 1313, 1321 (2d Cir.1994); DeMassa v. Nunez, 770 F.2d 1505, 1506–07 (9th Cir.1985), I find no basis in the Fourth Amendment for excluding the materials simply because I did not undertake the review that I initially contemplated issuing the warrant.

Aside from a Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), challenge, which I have rejected,[1] the defendants have not contested the adequacy of the probable cause showing in the affidavit, which was supplemented by oral testimony.[2] They have not challenged the nexus between that showing and the warrant's definition of the premises to be searched and items to be seized.[3] They have not challenged the scope of the search or seizure (i.e., claimed that places were searched or items were seized beyond the limits of the warrant).

Thus, before the materials came into the government's hands and view, there had a been finding of probable cause to believe that the LOF defendants and one of their lawyers, the defendant Herzer, were jointly engaged in criminal activities. That finding was based on information independent of the materials that later were seized. The sufficiency and validity of that finding have not been contested by the defendants.

■ Nonetheless, the defendants contend that

[D]ocuments reflecting attorney-client communications are entitled to special protection under the Fourth Amendment, because of the "intrinsic high expectation of privacy" such documents enjoy. OKC Corp. v. Williams, 461 F.Supp. 540, 542 (N.D.Tex.1978). As a result, "a more rigorous fourth amendment standard ought to

1. The defendants argued that the affiant failed to inform me that Ohio law required a showing that the LOF defendants' self-dealing with their employer was unfair to LOF. (Doc. 111). For reasons expressed elsewhere (Docs.434, 504), I find no merit in that contention. There was, accordingly, no omission of material information by the government, because the law is not as the defendants claim. Aside from their Franks motion, the defendants have asserted no other challenge to the issuance, contents, or execution of the search warrant in this case.

2. The showing of probable cause, made when the warrant was issued, regarding joint criminality, distinguishes this case from United States v. Jote's, Inc., 720 F.Supp. 99 (N.D.Ohio 1987). In that case the defendants claimed that items seized from their business included materials that were privileged. The government asserted that it believed that the materials were within the crime-fraud exception, but that it could not show that such was the case without viewing the mate-

rials. In the instant case, probable cause of joint criminality involving client and counsel was shown independently of the documents now being claimed to be privileged. The purpose of the in camera inspection, as ordered in Jote's, was accomplished in this case prior to issuance of the warrant and seizure of the documents.

3. In contending that the Fourth Amendment required me to undertake post-search review of the documents before releasing them to the government, the defendants state, inter alia, that "the Court was required to find both that it had probable cause to believe that a crime or fraud took place and that each communication at issue was made with the intent to further the alleged crime or fraud in order to vitiate the attorney client privilege." (Doc. 154 at 14). I disagree: the Fourth Amendment requires a nexus between the showing of probable cause and the items to be seized. That showing was made in this case, and has not been challenged by the defendants.

be applied to their seizures than to seizures of other materials." *Id.* at 553; *see also Klitzman, Klitzman & Gallagher v. Krut,* 744 F.2d 955, 959 (3d Cir.1984) (court must "scrutinize carefully the particularity and breadth of [a] warrant authorizing the search [of a law firm], the nature and scope of the search, and any resulting seizure."); *National City Trading Corp. v. United States,* 635 F.2d 1020, 1026 (2d Cir.1980) ("a law office search should be executed with special care to avoid unnecessary intrusion on attorney-client communications.").

(Doc. 154 at 10). *See also* Doc. 113 at 9; 217 at 10–23 (under seal)). *See generally* Note, *Law Office Searches: The Assault on Confidentiality and the Adversary System,* 33 Am. Crim.L.Rev. 1251 (1996).

Aside from their complaints about post-seizure handling of the seized materials, the defendants have not explained how either the search for or seizure of the documents in this case disregarded the standards for law office searches. The showing of probable cause was more than adequate. The warrant did not issue until after the affidavit had been supplemented by oral testimony. The defendants have not contended that I failed to "scrutinize carefully the particularity and breadth" of the warrant, to ensure that it was limited to the showing of probable cause, which encompassed criminal misconduct by the lawyer whose office was to be searched.[4] The defendants have raised no complaint about the scope of either the search or seizures. Though a lot of material was seized, none of it was outside the reach of the warrant, which, in turn, was based on an unchallenged finding of probable cause. The predicates for a law office search were satisfied, and the search itself was conducted in accordance with the directives of the warrant.

The defendants claim that cases such as *In re Antitrust Grand Jury,* 805 F.2d 155 (6th Cir.1986), stand for the proposition that the Fourth Amendment requires post-search in camera review before release of the documents to the government. Like *Antitrust Grand Jury,* many of the cases cited by the defendants are distinguishable on the basis that they involve grand jury subpoenas directed to lawyers. *See In re Richard Roe, Inc.,* 68 F.3d 38 (2d Cir.1995); *In re Grand Jury Subpoena,* 31 F.3d 826 (9th Cir.1994); *In re John Doe, Inc.,* 13 F.3d 633 (2d Cir. 1994); *In re Federal Grand Jury Proceedings,* 938 F.2d 1578 (11th Cir.1991); *In re Grand Jury Investigation,* 842 F.2d 1223 (11th Cir.1987); *In re Sealed Case,* 754 F.2d 395 (D.C.Cir.1985); *In re Grand Jury Proceedings (John Doe),* 754 F.2d 154 (6th Cir. 1985); *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032 (2d Cir.1984); *In re Special September 1978 Grand Jury,* 640 F.2d 49 (7th Cir.1980).

In those cases, there was no prior judicial determination, as there was in this case, of probable cause as to the joint criminality between the attorney and his clients. Absent such showing it is appropriate to require the government to make a prima facie showing that the materials sought by a grand jury subpoena are not privileged.

The other cases cited by the defendants, though involving law office searches, are distinguishable on the basis that the searches were challenged on conventional Fourth Amendment grounds. *See Klitzman, Klitzman & Gallagher v. Krut,* 744 F.2d 955, 960 (3d Cir.1984) (warrant authorized "a wholesale search" of all client files); *National City Trading Corp. v. United States,* 635 F.2d 1020 (2d Cir.1980) (overbreadth); *In Matter of Search of 636 South 66th Terrace,* 835 F.Supp. 1304, 1306 (D.Kan.1993) (seizure "grossly exceeded the scope of the search warrant"); *Hartford Assocs. v. United States,* 792 F.Supp. 358, 362 (D.N.J.1992) (lawyer claimed that searched files did not relate to the client whose conduct was being investigated). In those cases, the defen-

---

4. Were the showing of probable cause limited solely to the defendant Herzer without reaching to his clients, such showing, without more, might not suffice to overcome the clients' claim of privilege. *See In re Impounded Case,* 879 F.2d 1211, 1214 (3d Cir .1989). In such circumstances, a separate prima facie showing of crime or fraud on the clients' part could properly be called for. *Id. See also In re Impounded Case,* 840 F.2d 196, 202 (3d Cir.1988); *United States v. Rivera,* 837 F.Supp. 565 (S.D.N.Y.1993) (showing made as to lawyer and members of his staff. Here however, the probable cause showing implicated client and counsel alike.

dants, in effect, were arguing (as the defendants here do not) that prior judicial review had not adequately or validly found probable cause that all the documents to be and which were seized were outside the privilege.

The defendants also cite *United States v. Valdez–Pacheco,* 701 F.Supp. 775, 787 (D.Or. 1988), in support of their argument that the Fourth Amendment requires suppression of communications obtained in violation of the attorney-client privilege. Though that case involved allegations of joint wrongdoing between client and counsel, the court's reference to "suppression . . . on the ground that any of [the] conversations violate[d] the attorney-client privilege," *id.,* was expressed in the context of suppression under 18 U.S.C. § 2515, which is a statutory exclusionary rule applicable to conversations overheard by court-ordered surveillance. The question of suppression of attorney-client communications arose in that case, moreover, in light of special instructions in the surveillance order to refrain from intercepting attorney-client communications. In this case, the warrant expressly envisioned seizure of such communications on the basis of the showing of joint criminality. Likewise, *United States v. Aucoin,* 964 F.2d 1492, 1499 (5th Cir.1992), another case cited by the defendants, also involved interception of attorney-client communications during a wiretap; the court stated that improper interception of attorney-client communications would not lead to reversal unless the error affected a substantial right.

The defendants also point to *United States v. Abbell,* 914 F.Supp. 519 (S.D.Fla.1995), contending that the post-surveillance procedures instituted in that case should have been followed in this case. In *Abbell,* the government executed search warrants and seized about 100 boxes of materials from offices of lawyers and an investigator. Counsel for the lawyers contended that the agents executing the warrants had searched every file in the office of one of the lawyers, going far beyond the limits of the warrants. (Doc. 250, Exh. at 34).[5] As a result, "vast portions

of the materials seized relate[d] . . . to clients of the law firm who have no relationship to the matter under investigation or to the scope of any probable cause which may have been demonstrated." (*Id.* at 40). The defendants in *Abbell* challenged the warrant on the basis of want of probable cause and particularization. In addition, they claim that the searches and seizures were overly broad. (*Id.* at 20 n. 2).

The court appointed a special master to: 1) review all seized materials to determine if they were a) responsive to the warrants or an exception to the warrant requirement; b) protected by the attorney-client or other applicable privilege; and c) subject to disclosure to the government under the crime-fraud exception to the attorney-client privilege; 2) take into consideration submissions by the lawyers regarding the applicability or lack thereof of the attorney-client privilege; and 3) issue reports to the defense lawyers, without disclosure to the government, with regard to his determinations concerning their claims of privilege. 914 F.Supp. at 520–21.

According to the defendants, the procedures adopted by the court in *Abbell* were mandated under the Fourth Amendment, and those procedures, or procedures similar to them, should have been adopted and implemented in this case.

I disagree with the defendants' reading of *Abbell,* which is distinguishable from the instant circumstances. The search in *Abbell* was alleged to have been conducted without sufficient probable cause or particularization of the items to be seized. In addition, the lawyers in that case contended that an otherwise unlawful and unjustified search also exceeded the scope authorized by the warrants, whereby the government gained access to files of all the firm's clients, many of whom were not involved in the crimes allegedly committed by the attorneys. Those attorneys, moreover, practiced criminal law, so that inappropriate exposure of their files to

---

5. The exhibits attached to document 250 were received by facsimile out of order. I have rearranged the exhibits chronologically, and numbered the pages of all exhibits sequentially, thus

treating the various exhibits as a single exhibit with sequentially numbered pages for ease of reference.

government agents jeopardized the rights of defendants in other criminal cases.

None of the defects of Fourth Amendment dimension asserted in *Abbell* is alleged in this case. The warrant, search, and seizure in this case must, accordingly, be deemed lawful. Moreover, the Sixth Amendment concerns with government access to files of clients who are unrelated to the investigation are not present here. Files relating to clients other than the defendants Skeddle, Costin, Bryant, and Purser were neither sought out, examined, seized, retained, presented to the grand jury, nor otherwise improperly made available to the government. Here, unlike *Abbell*, the defendants' complaint is limited to post-seizure activities undertaken at my express direction.

I conclude, accordingly, that the defendants' Fourth Amendment challenge to the procedures after the seizure has no merit. This is not to say that their challenge does not raise important issues relating to the attorney-client privilege—which are addressed later in this opinion. It is, rather, simply to conclude that, though draped in, the defendants' challenges are not covered by the Fourth Amendment.

Even if my failure to follow the procedure that I incorporated into the warrant could be viewed as a violation of the defendants' Fourth Amendment rights, I see no basis on which to exclude the evidence seized by a warrant issued on the basis of probable cause and conforming to the showing of such cause in the underlying affidavit, and executed in accordance with its instructions. The agents complied with the special instruction that they bring to me any materials as to which a claim of privilege had been asserted. Thereafter, I conclude that review by me was not necessary and released the materials for inspection by the taint team.

If my change of mind (*i.e.*, decision not to conduct the review that I envisioned when I instructed the agents to bring to me materials as to which a privilege was asserted) collided with some Fourth Amendment principle not encompassed by any of the cases cited by the defendants, exclusion is not a proper response for any error on my part. As pointed out in *United States v. Leon*, 468

U.S. 897, 916, 104 S.Ct. 3405, 3417, 82 L.Ed.2d 677 (1984), "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." In this case, the error, if any, was entirely my own. Indeed, had the government declined to follow my directive that the documents be reviewed by a taint team, and instead insisted that I review eleven boxes of documents as to which I had already found probable cause, it would have placed itself in the unwelcome situation of telling a District Judge to do that which the Judge had just told them to do.

In any event, even if suppression were a proper response to judicial error, complete suppression of all materials is not appropriate. The proper remedy is to return any improperly procured materials. *See National City Trading Corp. v. United States*, 635 F.2d 1020, 1026 (2d Cir.1980) ("[t]o the extent that the files obtained here were privileged, the remedy is suppression and return of the documents in question, not invalidation of the search") (citations omitted); *United States v. Chuang*, 696 F.Supp. 910, 915 (S.D.N.Y.1988) ("the fact that a search involved privileged documents does not render the entire search unreasonable, at least where there was good reason to believe that documents that could legitimately be searched would be found"). *See also Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) (rejecting argument that intrusion into attorney-client communications constituted per se violation of right to fair trial and effective assistance of counsel); *United States v. Mittelman*, 999 F.2d 440, 443 (9th Cir.1993) ("separate legal rules are not necessary for remedying [law office] searches when they exceed the scope of the warrant"); *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 858 (9th Cir.1991) (Fourth Amendment exclusionary rule reaches only to items unlawfully seized, not those which were seized lawfully); *United States v. Dunloy*, 584 F.2d 6, 11 n. 4 (2d Cir.1978) (same); *VonderAhe v. Howland*, 508 F.2d 364, 372 (9th Cir.1974) (same).

In summary, I find the defendants' Fourth Amendment challenge to the government's access to and use of the materials seized

from Wickens, Herzer and Panza to be without merit. The defendants have not cited, and I have not found, a case in which any court has ever held that the Fourth Amendment was contravened by release to the government of materials seized by means of a properly limited warrant based on an adequate showing of probable cause of joint criminality between counsel and client. Absent such authority and persuasive argument for its application to the facts of this case, I decline to expand either the Amendment or its exclusionary rule to reach judicial decisions and actions following an otherwise lawful search and seizure.

## II. Fifth Amendment Challenge

■ The defendants also argue that release of the seized documents without post-seizure review violated their rights to due process under the Fifth Amendment, and on that basis they also seek suppression of the seized documents. (Docs. 113 at 14–19; 154 at 20–24; Doc. 217 (under seal) at 23–25). According to the defendants, failure to comply with my initial determination that I would review the eleven boxes of materials in camera deprived them of notice and an opportunity to be heard before government counsel and the grand jury obtained access to the documents.

Assuming that the defendants are correct in their claim that they should have been heard before the documents were disclosed to the government,[6] failure to give them that opportunity at that time does not require exclusion of all the seized materials. The appropriate response is to provide the defendants with that which was not given to them: namely, an opportunity to be heard, on a

document-by-document basis, with regard to their contention that various documents are not covered by the crime-fraud exception to the attorney-client privilege.

■ If documents are found to be privileged, the remaining question is one of remedy. As a general rule, improper admission of evidence at trial does not require reversal unless a substantial right has been affected. Fed.R.Evid. 103. This rule applies to improper admission of privileged documents. See, e.g., United States v. Aucoin, 964 F.2d 1492, 1499 (5th Cir.1992); United States v. Schaltenbrand, 930 F.2d 1554, 1563 (11th Cir.1991); United States v. Bernard, 877 F.2d 1463, 1465 (10th Cir.1989); United States v. White, 887 F.2d 267, 272 (D.C.Cir. 1989) (admission not harmless). See also United States v. Short, 4 F.3d 475–79 (7th Cir.1993) (erroneous admission of spousal testimony); United States v. Lofton, 957 F.2d 476, 477–78 (7th Cir.1992) (same). The effect of this standard is, in the event that admission of privileged documents is held on appeal not to have been harmless, to deprive the government of the use of such documents at any retrial. Where the error in admitting privileged documents at trial is harmless, no other sanction is imposed on the government. If this is the situation where the government has been able to use privileged material not only prior to but during trial, there is no reason to impose any remedy in this case other than exclusion of documents found to be privileged.[7]

■ The remaining question is whether, as asserted by the defendants, access by government counsel to any such privileged documents should lead to their disqualifica-

---

6. By hindsight, a safer course would have been to have given notice to the defendants Skeddle, Costin, Bryant, and Purser and the lawyers whose offices were searched to show cause within a specified period why the materials should not be released to the government. See Hartford Assocs. v. United States, 792 F.Supp. 358, 367 (D.N.J.1992) (court, though overruling the defendant's demand for injunctive relief under Fed. R.Crim.P. 41(e), noted with approval procedure adopted by a Magistrate Judge whereby persons whose files were seized could review the seized materials in camera and assert claims of privilege as to specific documents).

7. To the extent that privileged documents may have been used by the government in its presentation before the grand jury, such use does not require dismissal of the indictment (which, in any event, is not a remedy being demanded by the defendants). United States v. Calandra, 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974) (grand jury is "unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials"); In re Sealed Case, 877 F.2d 976, 981–82 (D.C.Cir.1989) (affirming trial court ruling that grand jury could consider allegedly privileged material; noting that exclusion of evidence at trial could be sought following return of an indictment).

tion. The defendants cite two cases in support of this demand, *United States v. (Under Seal),* 757 F.2d 600 (4th Cir.1985), and *United States v. Horn,* 811 F.Supp. 739, 753 (D.N.H.1992), *rev'd in part on other grounds,* 29 F.3d 754 (1st Cir.1994). Each case is distinguishable.

In *Under Seal* a prosecutor had access to several documents containing privileged communications between the defendants and their defense counsel. The trial court ruled that, due to the possible benefits to the prosecution from insights gained as a result of such access, the prosecutor should be disqualified. On appeal, the Fourth Circuit held that the government's challenge to the disqualification order was moot due to an intervening return of a grand jury indictment. The court expressly held that it would not address or resolve the issue of "the power of federal courts to control grand jury investigations by the disqualification device as a means of suppressing wrongfully obtained evidence, or as an exercise of general supervisory powers." *Id.* at 604.[8]

In *Horn* defense counsel, while reviewing discovery materials provided by the government, asked to have copies made of selected materials "for the specific purpose of locating material for cross-examination, for preparation of defense witnesses, and for use in connection with their trial tactics and strategy." 811 F.Supp. at 739. The person who made the copies made a duplicate set, which was given to the prosecutor. The count, finding that the prosecutor had thereby "trespassed" on "[i]mportant rights ... by ... impairing [the defendants'] right to effective assistance of counsel and a fair trial ... and [damaging] the integrity of the process," *id.* at 752, ordered, among other remedies, disqualification of the prosecutor.

■ In this case, government attorneys have had access to communications between the LOF and lawyer defendants concerning the transactions giving rise to the indictment of all the defendants. Such access has not given them insight, as in *Horn,* to the strategies, theories, and tactics of the lawyers representing the defendants in this prosecution. At most, government counsel have been able to come to some greater understanding of the activities which, the government alleges, constituted crimes. The Sixth Amendment right to counsel in the defense of the pending charges is not jeopardized by the government's exposure to allegedly privileged communications between jointly charged defendants.

The circumstances in *Under Seal* may be closer to the circumstances in this case—the nature and significance of the materials is not, however, apparent from the Fourth Circuit's opinion. Nonetheless, the prosecutor who had had access to the materials had participated in presentment of the case to the grand jury, 757 F.2d at 602, and the appellate court did not view that fact as a basis for finding that the appeal was not moot. Under these circumstances, I do not find *Under Seal* to justify granting the defendants' request that government counsel be disqualified due to their exposure to documents that I may determine to be privileged, where the privilege can be applied to exclude those documents at trial. This is particularly true where the government has not gained insight via the documents into the relationship between the defendants and the attorneys defending them in this prosecution.

I conclude, accordingly, that any denial of the right to be heard does not entitle the defendants to any relief other than exclusion of such documents as I may find to have been privileged communications between the LOF and lawyer defendants. The more drastic remedies demanded by the defendants—namely exclusion of all other documents and disqualification of government counsel—find no support in the cases cited by the defendants or elsewhere, and are not justified under the circumstances of this case.

8. As a general rule under *Bank of Nova Scotia v. United States,* 487 U.S. 250, 254, 108 S.Ct. 2369, 2373, 101 L.Ed.2d 228 (1988), "a federal court may not invoke supervisory power to circumvent the harmless-error inquiry." In light of *Bank of Nova Scotia,* my authority to supervise the conduct of the United States Attorney's office is so circumscribed that, even if I were inclined to grant the motion to disqualify, I doubt that I have authority to do so. Even if I had such supervisory power, it should not be exercised absent a showing of prejudice which cannot otherwise be avoided or remedied by less drastic means. No such showing appears in this case.

### III. Application of the Crime–Fraud Exception in This Case

■ The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law," *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981), but "[t]he privilege cannot stand in the face of countervailing law or strong public policy and should be strictly confined within the narrowest possible limits underlying its purpose." *United States v. Goldberger & Dubin, P.C.,* 935 F.2d 501, 504 (2d Cir.1991). Thus, "while [s]ociety has every interest in assuring that legal advice is sought about how contemplated business transactions can be made to conform to the law ... [it], however, has no interest in facilitating the commission of contemplated but not yet committed crimes, torts, or frauds." Epstein, *The Attorney–Client Privilege and the Work–Product Doctrine* 251 (3d ed.1997). The attorney-client privilege, the Sixth Circuit pointed out in *In re Antitrust Grand Jury,* 805 F.2d 155, 162 (6th Cir.1986), "is not an absolute privilege," and "[i]t applies only where necessary to achieve its purpose and protects only those communications necessary to obtain legal advice." In "some circumstances the privilege is very narrowly construed." *Id.* Accord, *Fausek v. White,* 965 F.2d 126, 129 (6th Cir.1992) (attorney-client privilege "should be construed narrowly").

■ Thus, where a client consults a lawyer in furtherance of a planned or continuing crime or fraud, communications between client and counsel that otherwise would be protected from disclosure by the attorney-client privilege lose that protection. "The privilege takes flight if the relation is abused," the Supreme Court stated in *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933), so that "[a] client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told." Accord, *e.g., In re Antitrust Grand Jury,* 805 F.2d at 162 ("[a]ll reasons for the attorney-client privilege are completely eviscerated when a client consults an attorney not for advice on past misconduct, but for legal assistance in carrying out a

contemplated or ongoing crime or fraud"); *In re. Int'l Systems and Controls Corp. Securities Litigation,* 693 F.2d 1235, 1242 (5th Cir.1982) (crime-fraud exception applicable where "the client consults an attorney for advice that will assist the client in carrying out a contemplated illegal or fraudulent scheme").

■ To determine whether the veil is to be taken from otherwise privileged communications, a court

> will conduct a two-part inquiry. First, there must be a prima-facie showing that the client was engaged in criminal or fraudulent conduct when the client sought the advice of counsel, that the client was planning such conduct when the client sought the advice of counsel, or that the client committed a crime or fraud subsequent to receiving the benefit of counsel's advice. Second, there must be a showing that the attorney's assistance was obtained in furtherance of the criminal or fraudulent activity or was closely related to it.

Weinstein & Berger, *Weinstein's Federal Evidence* 503–83 – 84 (McLaughlin ed.1997).

This determination can, at the court's discretion, be made in camera. *United States v. Zolin,* 491 U.S. 554, 568–72, 109 S.Ct. 2619, 2628–31, 105 L.Ed.2d 469 (1989). In most instances, the party claiming that the crime-fraud exception applies will be asking the court to review the putatively privileged documents in camera to determine whether they are subject to disclosure. In this case, however, the defendants, who contend that the privilege exists despite the probable cause showing in the affidavit for the search warrant, have submitted briefs and materials for in camera review. (Docs. 217, 250, 252, 238). In addition, the defendants have asked to have government trial counsel excluded from any proceedings relating to the claim of privilege; the government objects to the defendants' request that its trial attorneys be barred from participation in such proceedings.

In *Zolin* the Court stated that a party requesting in camera review must make a "threshold showing that such review is appropriate." *Id.* at 570, 109 S.Ct. at 2629.

The defendants have described some of their anticipated evidence and discussed some of their theories of the case in their submissions. (Docs. 238, 239 (under seal)). In essence, the defendants contend that, when their evidence is considered, the inference, which was part of my finding of probable cause for the search warrant, that they consulted with counsel to further an illegal purpose, is unsupportable, so that their claim of privilege should be sustained.

Compelling the defendants to reveal their evidence and theories of the case to the prosecutors responsible for presenting this case at trial would contravene two fundamental principles. First, the government is not entitled to insight into the defendants' case before its presentation in court. A contrary rule would jeopardize basic Sixth Amendment rights. *See, e.g., Horn,* 811 F.Supp. at 753. Second, refusing to accept and consider the defendants' submissions unless the government's trial counsel were present would contravene the doctrine of *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), which permits a defendant to assert one right without sacrificing some other right. To avoid either compromising the defendants' Sixth Amendment rights or requiring them to forego such rights to obtain the review they seek, their materials will continue to be considered ex parte, and my rulings as to individual documents will be disclosed only to the government's "taint team."

■ The burden is on the government, which is seeking to deprive the defendants of the benefits of the privilege, to show "that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof ." *In re Richard Roe, Inc.,* 68 F.3d 38, 40 (2d Cir.1995). *Accord, Antitrust Grand Jury, supra,* 805 F.2d at 165–66 ("We are persuaded by the Second Circuit's enunciation and adopt it as our evidentiary standard of a *prima facie* showing"). There must, therefore, be sufficient evidence that "the client was engaged in or

planning misconduct at the time he seeks the advice of counsel." *Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46, 53 (M.D.N.C. 1987). The government is not, however, required to establish the "fraudulent nature of the objective ... definitively [and] there need only be presented a reasonable basis for believing that the objective was fraudulent." *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1039 (2d Cir.1984).[9]

## A. The Defendants Sought Legal Advice to Accomplish an Unlawful Purpose

■ In determining the "fraudulent nature of the objective," *id.,* the client's purpose is controlling. *See, e.g., United States v. Calvert,* 523 F.2d 895, 909 (8th Cir.1975). Thus, "the privilege ends when a client *consults* an attorney seeking advice that will promote intended or ongoing criminal activity." *United States v. Neal,* 27 F.3d 1035, 1048–49 (5th Cir.1994). An important question, which is material in this case, is whether, and under what circumstances, communications undertaken to learn whether an anticipated course of conduct is lawful are protected by the attorney-client privilege. Where the claim is made that the clients were simply seeking to obtain legal advice about the lawfulness of their anticipated conduct, the government

> must show that the client, when consulting the attorney, knew or should have known that the intended conduct was unlawful. Good-faith consultations with attorneys by clients who are uncertain about the legal implications of a proposed course of action are entitled to the protection of the privilege, even if that action should later be held improper.

*State ex rel. North Pacific Lumber Co. v. Unis,* 282 Or. 457, 579 P.2d 1291, 1295 (1978). *Accord, Sound Video Unlimited, Inc. v. Video Shack, Inc.,* 661 F.Supp. 1482, 1487 (N.D.Ill.1987) (client "either knew or recklessly disregarded that his ... activities were illegal"); *Caldwell v. Dist. Ct.,* 644 P.2d 26,

---

**9.** The burden is on the government to prove admissibility (*i.e.,* the applicability of the crime-fraud exception) by a preponderance of the evidence. *See generally* Saltzburg, Martin & Capra, *Federal Rules of Evidence Manual* 64–65 (6th ed.1994).

33 (Colo.1982); *Whetstone v. Olson,* 46 Wash. App. 308, 732 P.2d 159, 161 (1986).

In this case, the information obtained prior to issuance of the search warrant showed probable cause to believe that the LOF defendants, with the aid and counsel of the defendant Herzer, created corporations to engage in transactions to obtain money and property from LOF. Several steps were deliberately taken to conceal from LOF the involvement of the LOF defendants in both the corporations and transactions, including creation of several corporate layers, through which the proceeds from the transactions passed into the LOF defendants' control. As a result of these activities, the LOF defendants allegedly obtained several millions dollars in money and property from LOF.

At various stages of this proceeding, the LOF defendants have contended that they contacted and consulted with the defendant Herzer to determine whether their activities would violate the law. For purposes of this opinion, I accept the defendants' assertion that a lawful desire to learn about the legal consequences of their proposed self-dealing motivated, at least in part, their consultation with the defendant Herzer.

■ I also am persuaded, however, that the LOF defendants had an additional, illegitimate purpose when they approached Herzer for his advice: namely, to profit at LOF's expense. Their acquisition of substantial funds almost immediately following the initial payment by LOF to CTM and receipt during the next two years of approximately $7.7 million show that, from the outset, the LOF defendants wanted to enrich themselves through their self-dealing. That was their goal when they sought legal advice from Herzer. Though they may also have wanted to find out whether there were lawful methods to achieve that purpose, that fact does

not overcome the unlawfulness of their underlying desire to profit at LOF's expense.[10]

■ Whether the LOF defendants disclosed that desire to Herzer does not matter, because it is the client's purpose that controls in applying the crime-fraud exception to the attorney-client privilege. Unawareness on the lawyer's part of the client's unlawful purpose or desire does not matter. *See, e.g., United States v. Laurins,* 857 F.2d 529, 540 (9th Cir.1988); *In re Sealed Case,* 754 F.2d 395, 399 (D.C.Cir.1985) ("[i]t is well settled that an attorney's ignorance of his client's misconduct will not shelter that client from the consequences of his own wrongdoing"); *United States v. Saccoccia,* 898 F.Supp. 53, 57 (D.R.I.1995). Even though the advice has been rendered by counsel in good faith, use of that advice to accomplish an unlawful purpose leaves the communication unprotected. *Cf. In re Bairnco Corp. Securities Litigation,* 148 F.R.D. 91, 101 (S.D.N.Y.1993) (client misrepresented advice of counsel, rendered without intent to defraud; crime-fraud exception applied because counsel's advice was used by the client with intent to defraud).

I also find that, before they contacted or met with Herzer, the LOF defendants knew, or had substantial reason to know, that such self-enrichment was not lawful. They were aware of, and had agreed to abide by, LOF's policies against self-dealing and prohibiting them from placing personal interests ahead of the company's interests. Their awareness that their self-dealing might violate those policies explains their efforts to conceal their activities from LOF. At the very least, the LOF defendants, I find, knew before they sought Herzer's advice that profiting at LOF's expense would violate their contractual obligations to their employer. If that were not their understanding, there would

10. The rapidity with which funds from LOF flowed to the defendants, the amount of those funds, and the duration of their receipt indicate that self-enrichment was the LOF defendants' objective when they approached Herzer. The circumstances might have been different, and their contention about the innocence of their purpose more persuasive, if, for example, they had not received any profits directly or indirectly from their transactions with LOF. Such might have been the case where, once they entered into an unprofitable contract with LOF, they used that contract as a basis for trying to get other, profitable contracts to provide similar services for other customers. In that situation, no harm would have been done to LOF, despite the breach of the obligation to refrain from self-dealing, and no culpability under the mail and wire fraud statutes would arise.

have been no reason for them to be so secretive.

I also conclude that the LOF defendants, as highly placed and experienced corporate officials, knew that they had an overriding duty of loyalty to LOF. Whether they knew that the law referred to that obligation to LOF as a fiduciary duty is immaterial, as is their ignorance of the precise permutations of corporate law. The duty of faithful service owed by a servant to a master is a fundamental and unvarying precept of our social, corporate, and legal systems. No reasonable officer in the position of the LOF defendants could, in my view, have believed that he could lawfully engage in transactions with his employer that would enable him to profit at the company's expense.[11]

I find, accordingly, that the record in this case[12] shows that, though the defendants may have been "uncertain about the legal implications of [their] proposed course of action," nonetheless, before they approached Herzer, they "knew or should have known that the intended conduct was unlawful." *North Pacific Lumber Co.*, 579 P.2d at 1295. Though one motivating factor may well have been to learn whether their methods were lawful, another motive was to get Herzer's help as they undertook to enrich themselves at LOF's expense. At best, their motives were mixed: the unlawfulness of their desire for self-enrichment defeats their claim that their communications with Herzer must be deemed privileged because they may also have desired to accomplish their unlawful purposes through lawful means. The cloak of legitimacy which they wished to place over their illegal plans could not and did not make those plans lawful.

In view of the LOF defendants' basic intent—to profit at the company's expense—they lost the right later to claim that communications which facilitated their illegal purpose, and enabled them to acquire substantial monies and property from LOF, were protected by the crime-fraud exception. The LOF defendants had conceived a criminal plan before approaching counsel, and none of their conversations with counsel in furtherance of that plan were privileged, including conversations about the putative lawfulness of director self-dealing under the fairness provision of O.R.C. § 1701.60(A)(1)(c). The defendants, I am persuaded, knew what they wanted and that it was wrong under their contractual and fiduciary obligations to LOF. In light of their general understanding of their legal obligations to LOF, the defendants' ignorance of the details of Ohio corporate law does not shield them from the consequences of their violation of that law, and it does not give privileged status to communications that furthered their illegal purposes.

### B. The "In Furtherance" Requirement

 In addition to finding that the client had an unlawful purpose at the time of the communications, a court also must find that particular conversations were "in furtherance" of that purpose because the crime-fraud exception "applies only when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal criminal activity." *In re Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir.1986). *See also In re Antitrust Grand Jury*, 805 F.2d at 168; *Pritchard–Keang Nam Corp. v. Jaworski*, 751 F.2d 277, 282–83 (8th Cir.1984). "A finding that the work product reasonably relates to the subject matter of the possible viola-

---

**11.** The understanding about their obligations to LOF that can reasonably be attributed to the LOF defendants, in view of their experience and corporate rank and responsibilities and their awareness of company policies, exceeds that which was attributed to the defendants in *Sound Video, supra*, about the unlawfulness of their wiretapping activities.

**12.** I have examined the materials submitted under seal by the defendants and their defendants' memorandum interpreting those materials. (Docs. 238, 239 (under seal)). Without disclosing the defendants' analysis of and arguments

about those materials, I note that that analysis and those arguments were premised on two propositions that I have rejected: namely, the effect of O.R.C. § 1701.60(A)(1)(c) (*see* Docs. 358, 505) and the defendants' putatively lawful purpose when they first approached the defendant Herzer. For the reasons expressed herein, I conclude that the defendants' purpose was not to obtain legal advice about a lawful venture; it was, rather, to obtain legal advice in order to accomplish illegal self-enrichment at LOF's expense.

tion," the Second Circuit stated in *In re Sealed Case,* 676 F.2d 793, 815 (D.C.Cir. 1982), "should suffice." *See also In re Bairnco Corp. Securities Litigation,* 148 F.R.D. 91, 100 (S.D.N.Y.1993) ("a finding that the communications reasonably relate to the subject matter of the possible violation"). There must be a "close relationship" between the communications and the client's illegal activities, *In re Murphy,* 560 F.2d 326, 339 (8th Cir.1977), which can be shown by a "'purposeful nexus' between the communications at issue and the criminal or fraudulent activity." *Duttle v. Bandler & Kass,* 127 F.R.D. 46, 56 (S.D.N.Y.1989). Communications relating to "untainted transactions ... retain their privileged status." *Id.*

The "in furtherance of the crime or fraud" requirement must be met regardless of when the communications occurred—before, during, or after commission of the crime or fraud as to which the advice was sought and the communications were made. Some of the communications as to which privilege is asserted occurred after LOF learned about the defendants' self-dealing. In the defendants' view, any subsequent communications could not have been in furtherance of the alleged crimes or frauds. Conversations occurring after discovery of an alleged crime or fraud, the defendants contend, cannot further prior criminal acts.

This is certainly true "when a person consults an attorney in an effort to defend against past misconduct or to get legal advice or assistance." *Sound Video,* 661 F.Supp. at 1486. *Accord, United States v. Marshank,* 777 F.Supp. 1507, 1527 (N.D.Cal.1991) ("where an attorney has represented a defendant in the same criminal matter in which the attorney is implicated, the crime-fraud exception 'does not thereby justify an abrogation of the privilege as to all dealings between the two, as attorney and client").

 But this does not mean that all conversations following discovery of a crime or fraud are automatically privileged: "any communications made with a view to covering up past acts of misconduct are in fact made with the purpose of perpetrating a crime or fraud, and hence are not privileged." Saltzburg, Martin & Capra, *Federal Rules of Evidence Manual* 620 (6th ed.1994) (*citing In re Sealed Case,* 754 F.2d 395, 402 (D.C.Cir.1985)). As another author has stated:

all communications made after the crime or fraud has occurred may also be subject to close scrutiny. The inquiry will focus on whether the purpose was to seek legal advice on how to "cover up" the completed fraud. If the communications were made with the intention of covering up the crime or fraud, they will not be privileged.

Epstein, *supra* at 257. *See also In re John Doe Corp.,* 675 F.2d 482, 491 (2d Cir.1982) (later communications undertaken to conceal criminal scheme not privileged); *Sound Video,* 661 F.Supp. at 1486 ("communications fall within the crime/fraud exception if they were made to conceal a past crime or fraud").

 Finally, "[a]ttorneys' bills and communications regarding retainer agreements are not privileged." *Duttle,* 127 F.R.D. at 52. *Accord, e.g., Saccoccia,* 898 F.Supp. at 58. To be given privileged status, "fee information must amount to or reveal confidential information regarding the advice sought from the attorney." *Id.* If the advice itself was sought to further an unlawful act, any information regarding the fees paid and the work performed to earn such fees should, in any event, not be privileged.

The defendants have submitted an extensive privilege log (Doc. 217 (under seal)) and many of the materials that they contend are privileged. (Doc. 239 (under seal)).[13] Not all of the materials as to which the defendants assert privilege are presently before me. Thus I am not currently able to undertake an examination of all the materials claimed by the defendants to be privileged.

It appears appropriate, in any event, to grant leave sua sponte to the defendants to submit a revised privilege log, along with any documents, beyond those presently included in Doc. 239 (under seal) as to which they

---

**13.** In view of the leave being granted in this order to the defendants to submit a revised privilege log, they need not comply with my recent request to conform the present log (Doc. 217 (under seal)) with the exhibits submitted in Doc. 239 (under seal).

assert a claim of privilege in light of the doctrines enunciated, findings made, and conclusions reached in this opinion. Without limiting the scope of the defendants' claims in the revised privilege log (though I expect them to conform such log to the conclusions reached herein), I anticipate that they will address such issues, *inter alia*, as the absence of a relationship between particular documents and the crimes alleged in the indictment and the inapplicability of the crime-fraud exception to communications occurring after the discovery of their alleged misconduct.

Such submission shall be without prejudice to the defendants' right to contend on appeal, if such occurs, that all documents encompassed by their current privilege log were impermissibly made available to and used by the government, and to renew at that time such other challenges as they have made in support of their pending motion relating to the claim of attorney-client privilege.

### *Conclusion*

I conclude that there is no merit to the defendants' Fourth or Fifth Amendment demands for suppression. I also conclude that communications between them and counsel in furtherance of the criminal activities alleged in the indictment will not be protected by the attorney-client privilege, because those communications come within the crime-fraud exception to the attorney-client privilege. A final ruling as to any specific documents as to which a claim of privilege continues to be asserted will be held in abeyance pending the defendants' submission of a revised privilege log and accompanying documents.

For the foregoing reasons, it is hereby

ORDERED THAT:

1. Defendants' motion to suppress (Doc. 113) overruled with regard to their Fourth and Fifth Amendment claims; and

2. The defendants are granted leave sua sponte to submit a revised privilege log, along with the documents as to which they claim privilege, in light of the findings and conclusions as set forth herein; said revised log to be submitted within ten days of the date of this order; government's taint team's response to be filed within ten days thereafter; defendants' reply to be filed within ten days thereafter; filings to be made pursuant to this order are to be made under seal.

So ordered.