JOURNAL ENTRY AND OPINION
{¶ 1} In this appeal we are asked to decide whether attorney billing documents that describe the nature of work performed for the general partner of a limited partnership are protected from discovery by the partnership's limited partners under the attorney-client privilege. We hold, under the facts presented here, the documents are not privileged because: (1) the nature of the relationship between the general partner and the partnership itself is such that neither one of them can assert the privilege against the other; and (2) the privilege does not apply to communications between an attorney and client when those communications are alleged to further contemplated or ongoing unlawful activity.
{¶ 2} Plaintiffs-appellees, Jeffrey Jantz and Carl Hill, are limited partners in the Euclid Retirement Village Limited Partnership (partnership). Defendants-appellants include Giffin Management Group, Inc., the partnership's managing general partner, Giffin Mortgage Company, Inc., and David Giffin, individually.[1] Plaintiffs are also suing attorney David Swetnam, who performed legal services for Giffin.
{¶ 3} Plaintiffs allege defendants breached their respective fiduciary duties in a variety of ways: (1) Giffin Management and David Giffin[2] engaged in self-dealing that resulted in wrongful usurpation of an opportunity rightfully belonging to plaintiffs; (2) Giffin Management unlawfully transfered partnership debt from a third-party lender to Giffin Mortgage in a transaction that was not an arm's length and (3) Swetnam performed legal services which assisted defendants in their various misdeeds.
{¶ 4} During the course of discovery, plaintiffs filed a motion to compel defendants to turn over all of Swetnam's billing documents. Defendants argued that in order to prove that Giffin Management and David Giffin breached their fiduciary duties defendants were entitled to all of Swetnam's unredacted billing invoices for the years 1994 through 1997. Plaintiffs explained that this information was necessary to determine (1) whether the legal services Swetnam provided to defendants were actually performed in contravention of plaintiffs' interests and (2) whether the fees they had paid to Swetnam were actually related to plaintiffs' business. In opposition, defendants argued that all the documents were protected by the attorney-client privilege they had with Swetnam. Defendants claimed that because Swetnam was hired by defendants, not plaintiffs, the nature of his legal services was privileged and not discoverable by the plaintiffs.
{¶ 5} After conducting an in camera inspection, the trial court, without specifying its reasons, rejected defendants' claim and ordered them to produce all the requested documents. In full, the court's order reads: "PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF UNREDACTED ATTORNEY FEE INVOICES FILED 04/20/01, IS GRANTED IN PART AND DENIED IN PART. THE ATTORNEY FEE INVOICES FROM 1994-1997 SHALL BE PRODUCED. THE ATTORNEY FEE INVOICES FROM 1998-1999 SHALL NOT BE PRODUCED." Defendants filed this appeal arguing that the trial court erred in deciding that Swetnam's documents are not protected by the attorney-client privilege and thus erred in granting plaintiffs' motion to compel.
{¶ 6} In its sole assignment of error, defendants state as follows:
 {¶ 7} THE TRIAL COURT ERRED IN GRANTING IN PART PLAINTIFF-APPELLEES' MOTION TO COMPEL PRODUCTION OF CERTAIN DOCUMENTS, INCLUDING INVOICES FOR LEGAL SERVICES DESCRIBING THE SERVICES RENDERED, WHICH ARE PROTECTED FROM DISCLOSURE BY ATTORNEY-CLIENT PRIVILEGE.
{¶ 8} The regulation of discovery, which includes determining the merits of a motion to compel, is left to the discretion of the trial court. Upon appeal, this court reviews any claimed error relating to a discovery matter under an abuse of discretion standard. Lightbody v.Rust (2000), 137 Ohio App.3d 658, 739 N.E.2d 840. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St. 3d 662 N.E.2d 1.
{¶ 9} "A fundamental principle in the attorney-client relationship is that the attorney shall maintain the confidentiality of any information learned during the attorney-client relationship." Lightbody
at 663 citing Kala v. Aluminum Smelting Refining Co., Inc. (1998),81 Ohio St.3d 1, 4, 688 N.E.2d 258.[3] Evidence Rule 501 specifies that the privilege of a witness shall be governed by statute or the principles of common law as interpreted by state courts "in the light of reason and experience."[4]
{¶ 10} As noted in Iron Workers Local Union No. 17 InsuranceFund, et al. v. Philip Morris, Inc. (N.D.Ohio. 1999), 35 F. Supp.2d 582, privileges "must be strictly construed * * * [b]ecause [they] keep relevant evidence from the fact-finder * * *." See, Weis v. Weis (1947),147 Ohio St. 416, 72 N.E.2d 245.[5] Moreover, only the client can waive the privilege, not the attorney. Lightbody, supra.
{¶ 11} The party asserting the attorney-client privilege bears the burden of proving that it is applicable. Waldmann v. Waldmann (1976),48 Ohio St.2d 176, 358 N.E.2d 521. Moreover, whether the privilege exists or whether any exception applies is a question of fact for the judge. See, State ex rel. Abner v. Elliott, Judge (1999), 85 Ohio St.3d 11,706 N.E.2d 765.
{¶ 12} 1. THE RELATIONSHIP OF THE PARTIES
{¶ 13} In Peterson v. Teodosio (1973), 34 Ohio St.2d 161,297 N.E.2d 113, the Ohio Supreme Court held that in a partnership each of the partners owes a fiduciary duty to each other. In 1994, the Court expanded upon Peterson in Arpadi v. First MSP Corp. (1994),68 Ohio St.3d 453, 628 N.E.2d 1335. Arpadi dealt with the question of how far a general partner's fiduciary duty extends. The court held that "[t]hose persons to whom a fiduciary duty is owed are in privity with the fiduciary such that an attorney-client relationship established with the fiduciary extends to those in privity therewith regarding matters to which the fiduciary duty relates. (Elam v. Hyatt Legal Services [1989],44 Ohio St.3d 175, 541 N.E.2d 616, approved and followed.)" Arpadi, supra at syllabus. In other words, an attorney employed by the general partner in a limited partnership is in privity with the limited partners and therefore has a fiduciary duty to the limited partners in matters relating to the partnership.
{¶ 14} In light of Arpadi, we are asked to decide the narrow question of whether the general partner who has hired an attorney to perform legal services purportedly unrelated to the partnership can assert attorney-client privilege regarding communications between it and the attorney. Moreover, can one partner claim exclusive control of the attorney-client privilege against other limited partners?
{¶ 15} We find persuasive the analysis provided by the federal court in In re Southern Air Transport, Inc., v. SAT Group, Inc. (S.D.Ohio 2000), 255 B.R. 706. In re Southern Air Transport involved a parent company and two of its wholly-owned subsidiaries. The parent corporation was run by James Bastian, who was its sole shareholder, director, chairman, and chief executive officer. In 1997, Bastian decided to restructure the parent company, resulting in the formation of a new holding company and two subsidiary companies. During the restructuring, all the legal work was handled by the parent company's in-house attorneys, who also served as attorneys for the two subsidiaries.
{¶ 16} Approximately one year after the restructuring, one of the subsidiaries was sold with the sale proceeds paid to the holding company. From the holding company, a portion of the proceeds was then paid to Bastian. The remaining subsidiary filed for bankruptcy. A group of plaintiffs, including the surviving subsidiary, filed a complaint against Bastian, the holding company, and others. The complaints claimed that Bastian's restructuring was a fraudulent scheme. According to plaintiffs, Bastian had intentionally devalued and transferred the old parent company's assets to the subsidiary company in order to sell it at an inflated price.
{¶ 17} During discovery, plaintiffs requested testimony and documents from the two in-house attorneys and the law firm they used during and after the restructuring.[6] Bastian asserted attorney-client privilege and refused to produce any of the requested documents.
{¶ 18} In deciding whether the attorney-client privilege applied, the court first determined that Bastian had control over all the business entities, both before and after the restructuring, and, therefore, held a fiduciary position with regard to each of those entities. The court further concluded,
 {¶ 19} * * * a corporate fiduciary is precluded from asserting privileges to protect his own interests that are adverse to those of the corporation.
{¶ 20} * * *
 {¶ 21} * * * Parent and subsidiary corporations generally share a common interest, and may, in appropriate circumstances, be considered a single client for purposes of the attorney-client privilege. The Glidden Co. v. Jandernoa 173 F.R.D. 459, 472 (W.D.Mich. 1997).
{¶ 22} In re Southern Air Transport, supra. 13. The court held that Bastian could not assert the attorney-client privilege and thus had to disclose the requested information. In reaching its decision, the Southern Air Transport court relied on the decision in MedcomHolding Co. v. Baxter Travenol Laboratories, Inc. (N.D.Ill. 1988),689 F. Supp. 841.
{¶ 23} In Medcom, Baxter sold its wholly owned corporate subsidiary, Medcom, Inc., to a holding company. The holding company filed suit alleging fraud in the sale of Medcom, Inc. During the ensuing lawsuit, Medcom, Inc. moved to compel discovery from Baxter and its attorneys, who all asserted the attorney-client privilege relating to the sale. "The Medcom court found that Baxter did not have exclusive control of the attorney-client privilege * * *. Since the relevant communications were made on behalf of both parent and subsidiary, both entities had a right to waive the attorney-client privilege, and both parties had a right to obtain the relevant information." Southern Air Transport at 712, citing Medcom, 689 F. Supp. at 844. The court further explained as follows:
 {¶ 24} It is axiomatic that a legal department acting as counsel for a multi-faceted enterprise cannot withhold information, based on the attorney-client privilege, from one of the members of that enterprise. In re Santa Fe Trail Transportation Co., 121 B.R. 794 (Bankr.N.D.Ill 1990) (even after the sale of a subsidiary of an enterprise, the former subsidiary is entitled to discovery from its former parent of documents prepared prior to the sale where attorneys acted for the entire enterprise).
{¶ 25} Southern Air Transport at 713-714.
{¶ 26} Giffin, individually, and Giffin Management stand in the same position as did Bastian and the holding company in Southern AirTransport, supra. Accordingly, the attorney-client privilege does not belong exclusively to either one of them, but rather belongs to anyone in privity with them and to whom they owed a fiduciary duty, namely, the partnership and all of its limited partners. Moreover, because Swetnam performed services for David Giffin and Giffin Management, both fiduciaries to the partnership, Swetnam too is in privity with them and has a corresponding fiduciary duty to the partnership.
{¶ 27} As a fiduciary to the partnership, Swetnam cannot assert attorney-client privilege to the general partner in order to keep information from the partnership or any of its limited partners. Arpadi,
supra. The partnership has an equal right to the documents created by Swetnam because he functioned as its attorney while performing legal services for defendants. To conclude differently would be tantamount to this court holding that the partnership is not entitled to its own documents. Such a result is contrary to any logical extension of Arpadi. Accordingly, the trial court did not abuse its discretion in deciding that Swetnam's records were not protected by the attorney-client privilege.
 {¶ 28} 2. THE CRIME-FRAUD EXCEPTION TO ATTORNEY-CLIENT PRIVILEGE
{¶ 29} We conclude, moreover, that the crime-fraud exception to the attorney-client privilege applies to the facts in the case at bar.
{¶ 30} In 1994, the Ohio Supreme Court in Moskovitz v. Mt. SinaiMed. Ctr. (1994), 69 Ohio St.3d 638, 660, 635 N.E.2d 331, explained the crime-fraud exception to the privilege:
 {¶ 31} * * * [T]he mere relation of attorney and client does not raise a presumption of confidentiality of all communications made between them. * * * Moreover, it is beyond contradiction that the privilege does not attach in a situation where the advice sought by the client and conveyed by the attorney relates to some future unlawful or fraudulent transaction. Advice sought and rendered in this regard is not worthy of protection, and the principles upon which the attorney-client privilege is founded do not dictate otherwise.
{¶ 32} Despite the fact that the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law," it will "take flight" if the confidential nature of the attorney-client relationship is abused. United States v. Skeddle
(N.D.Ohio. 1997), 989 F. Supp. 890, 900, citing Upjohn Co. United States
(1981), 449 U.S. 383, 389, 66 L.Ed.2d 584, 101 S.Ct. 677, and Clark v.United States (1933), 289 U.S. 1, 15, 77 L.Ed. 993, 53 S.Ct. 465; In reAntitrust Grand Jury (6th Cir. 1986), 805 F.2d 155, 162 (There is no attorney-client privilege when a client consults an attorney for legal assistance "in carrying out a contemplated or ongoing crime or fraud").
{¶ 33} In order to determine whether information, otherwise privileged, falls under the exception, a court conducts an in camera inspection of the communications at issue to see whether they reflect that an attorney's advice was sought "in furtherance of the criminal or fraudulent activity or was closely related to it." Skeddle at 900. Prior to the court's review, the party seeking to deprive another of the privilege must make a prima facie showing "that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." Skeddle at 900 citing Weinstein Berger, Weinstein's Federal Evidence 503-83-84 (McLaughlin ed. 1997). In other words, there must be a showing that "there is a reasonable basis for believing that the objective was fraudulent."Skeddle at 901 citing In re Grand Jury Subpoena Duces Tecum (2d Cir. 1984), 731 F.2d 1032, 1039; In re Antitrust Grand Jury (6th Cir. 1986), 805 F.2d 155.
{¶ 34} In the case at bar, plaintiffs had to present factual evidence proving that it had a reasonable basis for believing that the documents contained evidence that Giffin sought Swetnam's counsel in furtherance of unlawful activity. Plaintiffs specified the unlawful activity was self-dealing and the unlawful transfer of partnership debt. According to plaintiffs, both David Giffin and Swetnam breached their fiduciary duties to them and the partnership in the course of committing the unlawful acts. Apparently satisfied by plaintiffs' submission of evidence, the court conducted an in camera inspection.[7] After its inspection, the trial court ordered Giffin to turn over part of the requested documents. On the record before us, we do not find that the trial court abused its discretion in deciding that the documents were not privileged under the crime-fraud exception to the attorney-client privilege. Appellants' sole assignment of error is overruled.
{¶ 35} The judgment of the trial court is hereby affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES J. SWEENEY, P.J., and TERRENCE O'DONNELL, J., CONCUR IN JUDGMENTONLY.
[1] David Giffin is the principal of both Giffin Management and Giffin Mortgage.
[2] David Giffin is being sued individually on the basis that he so dominated Giffin Management that the partnership is entitled to pierce Giffin Management's corporate veil.
[3] See Canon 4 of the Ohio Code of Professional Responsibility. Ohio has codified the attorney-client privilege in R.C. 2317.02.
[4] We note that the Ohio Supreme Court has not yet addressed the specific issue presented in this appeal.
[5] Weis was a 1947 case construing Ohio General Code Section 11494, since replaced and now codified under R.C. 2317.02.
[6] Discovery was also aimed at a variety of other persons and entities, none of which is pertinent to this appeal.
[7] The record does not indicate any objection by Giffin as to the sufficiency or weight of plaintiffs' evidence of unlawful activity.